PIERCE, Judge.
Appellants herein, plaintiffs below, bring this appeal from a final decree dismissing their second amended complaint.
Over the past seventeen years, the status of the road involved has been disputed between Baya and other property owners. Until 1962, the dispute apparently was in the form of mere bickering among neighbors. Since 1962, when the first complaint was filed this dispute has, in one form *703 or another, been almost continually before the Courts of this State. In fact, on three previous occasions, there has been a reported decision by this Court on varied aspects of the dispute. See Baya v. Central and Southern Florida Flood Control District, Fla.App.1964, 166 So.2d 846; Baya v. Central and Southern Florida Flood Control District, Fla.App.1966, 184 So.2d 501; and Baya v. Williams, Fla.App.1966, 184 So.2d 675.
It seems that appearance of the Flood Control District in the styles of the cases, supra, was purely incidental and came about solely because a suit for declaratory decree by the Flood Control District was the catalyst that triggered the squabble into a full scale legal battle. Throughout this lengthy litigation and despite numerous side issues raised, the only real basic question involved is whether appellees, defendants below, have a right of access to property owned by the Williams Heirs, via a road traversing the property of Baya.
For the sake of clarity we quote at length from Baya v. Central and Southern Florida Flood Control District, 166 So.2d 846:
“We are confronted with a most voluminous record of twelve volumes, with many exhibits, which have been carefully examined inasmuch as the real point on appeal is the sufficiency of the evidence to sustain the decree of the chancellor.
“The pleadings are extensive and complex. The Court consolidated a suit by Central and Southern Florida Flood Control District requesting declaratory decree against the appellees Zibe Williams and others referred to as the Williams Heirs and their lessee, Barber, with a suit by the Williams Heirs and Barber seeking an injunction and other relief against the Flood Control District. The Williams Heirs counterclaimed against the Flood Control District and cross-claimed against the appellants Baya. The Williams Heirs also sought affirmative relief against both the Flood Control District and Baya. The appellants Baya crossclaimed against the Williams Heirs seeking to enjoin the use of a certain roadway, the subject matter of this lengthy litigation. We are now concerned only with the portion of the final decree by which the appellants Baya were permanently enjoined from obstructing or interfering with the use of the road by the Williams Heirs since no appeal was taken from the other matters determined by the chancellor.” (Emphasis supplied).
* * * * * *
“The disputed road runs southerly from State Road 70 in Highlands County traversing the lands of the appellants Baya in Sections 28 and 33, Township 37 South, Range 33 East, and continues into Section 4, Township 38 South, Range 33 East in Glades County terminating at the common boundary line of the Williams Heirs and Baya.”
There followed in the opinion some discussion of two fences with gates, one installed by the Williams Heirs where the “road” intersects State Road 70, and the other built by Baya on the line dividing his property and that of the Williams Heirs. This Court then held that, although the evidence was insufficient to support a finding of public dedication or public easement by prescription, the lower Court was correct in finding that a “common law way of necessity exists in favor of appellees.” In a per curiam opinion on rehearing, this Court while adhering to its position that there was no public easement, decided that “ * * * the Williams Heirs had established a private prescriptive right in the disputed road” in addition to the “way of necessity”.
The cause was remanded and a modified final décree pursuant to the mandate of this Court was entered on September 18, 1964. No appeal was taken from the modified decree.
Although not entirely clear, it appears that subsequent thereto Baya effectually denied use of the road to the defendants by locking the gate between his property and their property. Apparently defendants in *704 stituted contempt proceedings against Baya. Although the contempt proceedings were dismissed, another order was entered on January 22, 1965, from which the Bayas took an interlocutory appeal, wherein We held (Baya v. Central and Southern Florida Flood Control District, Fla.App.1966, 184 So.2d 501):
“The order appealed (1) denies Baya’s request to tax as costs against the Williams heirs attorneys’ fees and other expenses incurred by the Bayas in resisting a contempt rule allegedly botained (sic) by the Williams heirs through fraud and malice; (2) denies the Bayas’ motion for an order further modifying the final decree by striking certain phrases and entering an injunction restraining the Williams heirs from interfering with any gate or lock maintained; by the Bayas; and (3) partially denies Baya’s motion to tax as costs against the Williams heirs the full cost ($1554.55) c)f the transcript of record used on the prior appeal by requiring the Williams heirs to pay only half ($777.28) such expense.”
In affirming the order appealed, this Court found (1) there was no fraud and malice sufficient to sustain taxing of costs against the Williams Heirs; (2) “it would be contrary to prescriptive right to injunc-tively order it (the gate) to be kept locked”; and (3) that inasmuch as the order appealed was affirmed in part and reversed in part, apportionment of costs was proper.
Meanwhile, on March 26, 1965, the Bayas filed an amended complaint seeking an injunction and other relief against the defendants, and on May 13, 1965, second amended complaint was filed. From an order denying the defendants’ motion to dismiss and granting in part their motion to strike portions of the second amended complaint, plaintiffs filed an interlocutory appeal. The interlocutory appeal was disposed of on March 18, 1966 in Baya v. Williams, Fla.App., 184 So.2d 675. Although Ulrich was named in the style and body of the amended complaint and the style only of the second amended complaint, there is no mention of her in the interlocutory appeal, which was subsequent to granting of her motions for summary judgment and to strike her name from the complaint. In affirming the lower Court’s order striking portions of the complaint, this Court said at p. 676:
“The subject of the present interlocutory appeal is a subsequent suit filed by plaintiffs against the Williams heirs and others alleging unlawful and wilful extension and misuse of the road and seeking an injunction against them. The complaint also alleges facts which plaintiffs conclude amount to a forfeiture or abandonment of the easement by defendants because of alleged misuse. Among other things, the complaint alleges in Paragraph Three that the chancellor in modifying his original decree in 1964 failed to strike the words ‘together with existing ditches and shoulders’ in describing defendants’ easement. The chancellor struck certain portions of the complaint including Paragraph Three and those paragraphs relating to forfeiture and abandonment of the easement. Other portions of the complaint, including those seeking the injunction, were allowed to stand.
“We are of the view that the chancellor’s action in striking the disputed sections of plaintiffs’ complaint was correct, and we affirm.”
Subsequent to the interlocutory appeal defendants filed their answers and counterclaims, the gist of which was that the Bayas had trespassed on the “easement” and damaged the easement by moving a previously existing ditch. Defendants prayed for damages and injunction against further trespass.
Plaintiffs’ motions to dismiss defendants’ counterclaims, to strike portions of defendants’ answers and for more definite statement were denied in an order which allowed defendants to amend their counterclaims to seek an injunction to require restoration of ditches as they existed on July 24, 1962. *705 The plaintiffs answered the counterclaims. Voluminous testimony was taken, and numerous exhibits, including more than 100 photographs by plaintiffs, were introduced into evidence.
In the final decree entered on January 20, 1967, the appeal from which constitutes the instant case here, the able trial Judge has most capably unraveled the “tangled web” and lucidly defined the issues in this cause. After briefly outlining the history of the case the decree made concise findings which were supported by competent and substantial evidence. All points raised were dealt with and properly disposed of. We see no need to further belabor such “contentiousness among neighbors” but will herewith adopt, as part of this opinion, that portion of the final decree of the Court below, as follows:
“This cause came on for final hearing before me on December 22 and 23, 1966. The Court with the approval and consent of counsel viewed the road in issue in this case. The Court found such view to be useful in explaining and clarifying the evidence and facts brought out at the trial, but the view was not otherwise considered in reaching the decision made in this decree. The Court heard the testimony and personally observed the witnesses testifying in this case and has considered the evidence and the arguments of counsel for the respective parties.
“In prior litigation in this Court * * the defendants were granted a private easement by prescription over a road running south from Highway 70 across the plaintiffs’ land to land owned by the defendants. In that litigation this prescriptive easement was given a center-line description and was held to include 10]4 feet on each side thereof together with existing shoulders and ditches.
“In this suit, the plaintiffs seek to have this Court enter a mandatory injunction requiring the defendants to restore the road, including the shoulders and ditches, to the same width, level and condition as existed on and immediately prior to October 19, 1964. The plaintiffs also seek damages against the defendants for alleged unlawful trespass upon the plaintiffs’ land outside the boundary of the prescriptive easement and an injunction enjoining the defendants from further trespass or damage to the plaintiffs’ property. By their pleadings the defendants denied the plaintiffs’ claims and filed a counterclaim charging that the plaintiffs had constructed a new ditch on the west side of the road that was deeper and closer to the road than the ditches which existed prior thereto and that such new ditch was causing washouts into the road so as to impair the use of the defendants’ easement. The defendants seek to have this Court require the plaintiffs to move the ditch a sufficient distance away from the road so as not to cause its erosion into the ditch.
“Summary Judgment having heretofore been granted to defendant, FRANCES P. ULRICH, individually and as Executrix under the Last Will and Testament of Cecil Barber, reference to the defendants in this decree shall not be deemed to include that defendant.
“Based upon the evidence presented, the Court.makes the following findings:
“1. The road in question is a graded country road which has been in existence for many years. Since obtaining their easement, the defendants have spent approximately $1,900.00 for maintenance of the road. At no time have the plaintiffs spent any money in the upkeep of the road. From time to time there have been holes in the road and water standing in the road, depending primarily upon the amount of rainfall, but this was also true of the road before the defendants obtained their easement. The road has never been impassable. The road is and has been in reasonably good condition and adequate to handle the traffic to which it is being subjected.
*706 “2. The defendants have not enlarged the road beyond their prescriptive easement and they have not changed the character or condition of the road. They have maintained the road in a reasonable manner consistent with the requirements for its use. The work which was done was reasonable for its upkeep and in accordance with the usual practices for the upkeep of unpaved country roads. There have been no substantial changes in the level of the road or the height of the shoulders and such changes, if any, as have been made were those which are inherent in normal grading operations. There is no evidence that the defendants have trespassed upon the plaintiffs’ land outside of their easement. The plaintiffs have failed to show any actual damages suffered by them as a result of any actions on the part of the defendants.
“3. The defendants’ use and upkeep of their easement has not increased the burden on the servient estate or unreasonably interfered with the rights of the servient owner. While the defendants, the dominant owner of the easement, have the right to make reasonable repairs to the easement, they do not have a duty to repair and maintain it for the benefit of the plaintiffs, the servient owner. 25 Am.Jur.2d, Easements and Licenses, Sec. 85. Nevertheless, even if there was such duty, the Court concludes that the defendants would have met the same because of the upkeep and repairs which they have made. The Court notes that the plaintiffs have and are continuing to make a substantial use of the road themselves without making any contribution to the upkeep thereof. Under these circumstances, it would appear that the plaintiffs should be obligated for a share of the expenses in maintaining the road proportionate to their use thereof. See Barnard v. Gaumer [146 Colo. 409], 361 P.2d 778 (Colo.1961); Van Natta v. Nys [203 Or. 204], 278 P.2d 163 (1954). However, in this suit, the defendants have made no claim for reimbursement or for the determination of whether the plaintiffs are obligated to bear a proportionate amount of the expense of upkeep. Therefore, the Court is not passing on this question at this time.
“4. Late in 1964 the plaintiffs enlarged an existing ditch and dug a new ditch along the west side of the road. Thereafter, on occasions, there have been washouts from the road into the ditch. From the evidence presented, the Court is unable to say that the existence of the ditch caused these washouts. On the other hand, the Court is of the opinion that such washouts did not impede the plaintiffs’ use of the ditch in draining their lands and that, in any event, the plaintiffs cannot complain of the same by reason of having built the ditch in such close proximity to the road.”
The decree thereupon dismissed plaintiffs’ second amended complaint and also defendants’ counterclaim, which in our opinion was proper; so the same is herewith—
Affirmed.
LILES, C. J., and HOBSON, J., concur.